**LYNCH CARPENTER LLP**
Todd D. Carpenter (SBN 234464)
todd@lcllp.com
Scott G. Braden (SBN 305051)
scott@lcllp.com
9171 Towne Centre Drive, Suite 180
San Diego, California 92122
Telephone:   (619) 762-1910
Facsimile:   (858) 313-1850

*Attorneys for Plaintiff and
Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE MCCARTY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HURLEY INTERNATIONAL LLC, an Oregon Limited Liability Company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. **'25 CV 2117 JO    SBC**<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Kyle McCarty ("Plaintiff") brings this action, on behalf of himself and all others similarly situated, against Defendant Hurley International, LLC ("Hurley" or "Defendant"), and states:

## I.    NATURE OF ACTION

1.    "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). That statement remains just as true today as when it was written more than fifty years ago by Justice Mosk for a unanimous California Supreme Court. This putative class action seeks to hold a multimillion-dollar retailer accountable for a years-long pricing scheme that has misled consumers into overpaying for merchandise sold at Hurley's outlet stores. The scheme is simple: publish fake discounts off of inflated and fictitious "original" prices to drive up demand. As economists have explained, "the higher reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins." Staelin et al., *Competition and the Regulation of Fictitious Pricing*, 87 J. MKTG. 826, 835 (2023).

2.    Price is a primary signal of value in the consumer decision-making process.[1] False pricing manipulates this signal, distorting consumers' perceptions of value and inducing purchases they would not otherwise make. Retailers like Defendant exploit this dynamic by advertising deceptive discounts that promise significant savings. In reality, the supposed "original" prices are fabricated, and the discounts are illusory. The result is a systematic deception: consumers are led to believe they are receiving a bargain when, in fact, they are overpaying based on an inflated, imaginary benchmark.

3.    At all relevant times, Defendant has advertised false price discounts at Hurley outlet stores nationwide. Plaintiff brings this action to halt this deceptive practice and seeks

---

[1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (1992) ("[P]rice is materially utilized in the formation of perceptions of the product's value and influences the decision to purchase the product or to continue to search for a lower price."); Patrick J. Kaufmann et al., *Deception in Retailer High-Low Pricing: A "Rule of Reason" Approach*, 70 J. RETAILING 115, 118 (1994) ("[R]eference to a retailer's normal or regular price in retail sale price advertising provides the consumer with information used to determine perceived value.")

redress for consumers who were misled. Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief based on Defendant's false discount pricing scheme on apparel, accessories, shoes, and other items sold in its Hurley outlet stores.

4.      False reference pricing occurs when a seller fabricates an inflated "original" price and then claims to offer a steep discount from that number. This artificial price disparity deceives consumers into believing they are purchasing goods at a significant markdown from the prevailing market rate. The practice elevates the consumer's internal reference price, leading to increased perceived value and a corresponding willingness to pay more—a phenomenon widely documented in marketing literature.[2]

5.      Consider the following hypothetical, which mirrors Defendant's conduct: a seller knows a DVD can be sold profitably at $5.00, which reflects its fair market value. Instead, the seller falsely claims the DVD's "original" price is $1000.00 and advertises it as "90% off," offering it for $10.00. Consumers, believing they are securing a steep discount, buy the DVD at twice its true value. They are misled not only about the price but about the product's perceived market legitimacy and value.

6.      This deception manipulates demand. Absent the fake "original" price, the product would not command the inflated sale price. But the false discount creates artificial market pressure and perceived scarcity or value, triggering an increase in consumer willingness to pay. Over time, this shifts the market equilibrium, allowing the seller to profit from a manufactured illusion of value.

7.      Defendant's conduct violates multiple state and federal laws, including California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*).; and the Federal Trade Commission Act , which prohibits unfair or deceptive acts, practices, and false advertising in or affecting commerce (15 U.S.C. §§ 45(a)(1), 52(a)).

---

[2] *See, e.g.*, Grewal & Compeau, *Comparative Price Advertising*, *supra* n. 1, at 55 ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product.").

8.    Plaintiff brings this action on behalf of himself and similarly situated consumers who purchased Hurley outlet merchandise at purported discounts from fictitious reference prices. Plaintiff seeks to stop this unlawful pricing scheme, correct the false perception it created, and obtain relief for consumers who overpaid. Plaintiff also seeks a permanent injunction prohibiting Defendant from continuing this conduct and requests all available legal and equitable remedies, including actual, compensatory, statutory, and punitive damages; benefit-of-the-bargain damages; restitution; attorneys' fees and costs; and disgorgement of profits wrongfully obtained.

## II.    JURISDICTION AND VENUE

9.    This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff—along with at least some members of the proposed Classes (defined below)—are citizens of states different from that of Defendant.

10.    The Southern District of California has personal jurisdiction over Defendant because a substantial part of the events giving rise to Plaintiff's claims arose in this District and Defendant's misconduct alleged herein occurred in this District. Further, Defendant conducts substantial business in this District and has sufficient minimum contacts in California, and/or otherwise intentionally avails itself to the California market through the operation of its retail stores within the State of California.

11.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendant transacts substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims arose in this District, and Defendant's misconduct alleged herein occurred in this District.

## III.    GENERAL ALLEGATIONS

### A.    Retailers Exploit False Reference Pricing to Manipulate Consumer Behavior

12.    Defendant employs a false and misleading reference price scheme in the marketing and sale of Hurley outlet merchandise. These fictitious discounts are prominently

displayed at Hurley outlet stores to create the illusion of a deal where none exist.

13.    Academic research has consistently shown that false discounting schemes confer substantial benefits to retailers. "[F]raming a price increase as a discount can not only allow the firm to get higher margins, but also increase sales." Staelin et al., *supra*, at 835 (emphasis added). This tactic works because consumers often lack full information about the product or its market value,[3] particularly for retail clothing, where product attributes can vary widely and are not always readily apparent.[4]

14.    Defendant's use of inflated reference prices exploits well-documented psychological mechanisms in consumer behavior. First, consumers frequently treat price as a proxy for quality, especially when objective quality cues are lacking.[5] A higher reference price implies a more valuable product. Second, consumers are strongly influenced by the perception of getting a "deal."[6] Researchers have found that consumers often derive disproportionate satisfaction from obtaining a product at a perceived discount—regardless of the actual savings.[7] This effect, known as "transactional utility," was coined by Nobel

---

[3] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (e.g., style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (e.g., longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (e.g., whether the shirt's cotton was produced using organic farming methods). Michael R. Darby & Edi Karni. *Free Competition and the Optimal Amount of Fraud*, 16 no. 1 J. LAW & ECON. 67, 68-69 (1973).

[4] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain". Phillip Nelson. *Information and Consumer Behavior*. 78, no. 2 J. POL. ECON. 311, 311-12 (1970).

[5] Grewal & Compeau, *Comparative Price Advertising*, *supra* n.2, at 54; *see also* Richard Thaler. *Mental Accounting and Consumer Choice*, 4, no. 3 MKTG. SCI. 199, 212 (1985) [hereinafter Thaler, *Mental Accounting*] ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

[6] Grewal & Compeau, *Comparative Price Advertising*, *supra* n.2, at 52.

[7] Peter Darke & Darren Dahl. *Fairness and Discounts: The Subjective Value of a Bargain*, 13 no 3 J. OF CONSUMER PSYCH. 328 (2003).

laureate Richard Thaler to describe the added value consumers feel simply from the experience of buying something on sale.[8]

15.    Extensive literature in marketing and behavioral economics explains that consumer price evaluations are influenced by both internal and external reference prices.[9] Internal references are based on prior experience; external references are supplied by the seller, such as a "suggested retail price."[10] Studies show that external reference prices directly shape internal benchmarks,[11] particularly for infrequently purchased items like dress shirts or suits, where the buyer may have no established price expectations.[12] This makes consumers highly vulnerable to price manipulation by retailers.[13] As summarized by one leading study:

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal

---

[8] "To incorporate . . . the psychology of buying into the model, two kinds of utility are postulated: *acquisition utility* and *transaction utility*. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal.'" Richard Thaler. *Mental Accounting*, *supra* n.6, at 205.

[9] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Glenn E. Mayhew & Russell S. Winer. *An Empirical Analysis of Internal and External Reference Prices using Scanner Data*, 19 no. 1 J. OF CONSUMER RSCH. 62, 68 (1992) [hereinafter Mayhew & Winer, *An Empirical Analysis*].

[10] Mayhew & Winer, *An Empirical Analysis*, *supra* n.10, at 62.

[11] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the deal." Dhruv Grewal et al., *The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions.* 62 J. OF MKTG. 46, 48 (1998) ("Grewal et al., *The Effects of Price-Comparison Advertising*").

[12] As Thaler notes, "the [suggested retail price] will be more successful as a reference price the less often the good is purchased." Richard Thaler. *Mental Accounting*, *supra* n.5, at 212.

[13] "The deceptive potential of such advertised reference prices are likely to be considerably higher for buyers with less experience or knowledge of the product and product category." Dhruv Grewal & Larry D. Compeau. *Pricing and public policy: A research agenda and an overview of the special issue*, 18 no.1 J. PUB. POL'Y & MKTG. 3, 7 (1999) ("Grewal & Compeau, *Pricing and public policy*").

reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][14]

16.     In their recent publication, *Regulation of Fictitious Pricing* (2024), professors Staelin (Duke), Urbany (Notre Dame) and Ngwe (Microsoft/Havard) build on decades of foundational work to explain why fictitious reference pricing continues to flourish, despite early regulatory efforts to curtail it. They confirm that the empirical findings from earlier behavioral studies remain reliable and widely accepted in the economic discipline.[15]

17.     Staelin et al. further demonstrate that modern tools like smartphones have not corrected the problem but instead have expanded the use of fictitious pricing.[16] The authors note that "disclosure of the true normal price charged may be the only solution that could plausibly influence both consumer and firm behavior," and that deceptive pricing tactics become even more prevalent as market competition intensifies.[17]

18.     Retailers, like Defendant, are therefore incentivized to continue deploying fictitious reference prices because they know consumers are psychologically wired to respond. As Staelin et al. explain, "the magnitude of both real and fake discount[s] were significant predictors of demand above the effects of the actual sales price, with fake discounts having a substantially larger effect than real discounts."[18] In short: fake discounts drive sales—and Defendant knows it.

---

[14] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

[15] *See* Staelin et al., *supra*, at 826 ("***It is now well accepted*** that many consumers get ***extra utility***, beyond that associated with consuming a product from purchasing it on deal [] and that magnitude of this utility is a function of the size of the deal.") (emphasis added).

[16] Staelin et al., *supra*, at 826 (explaining how the study "develop(s) a descriptive model explaining why fictitious reference pricing has spread instead of being extinguished by competition.").

[17] *Id.* at 826. *See also id.* at 831 ("Identical firms, selling identical products, make positive profits because of their obfuscation strategy, and the likelihood of obfuscation grows as competition intensifies.").

[18] *Id.* at 835 (emphasis added).

**B.      Defendant Engages in a Fraudulent Price Discounting Scheme**

19.      Defendant, a specialty retailer of men and women's clothing, has for years engaged in a deceptive pricing scheme at its Hurley outlet stores located throughout California. This scheme involves advertising merchandise at purported "sale" prices that are falsely represented as discounts from inflated "original" prices printed on the products' price tags. In most instances, these items are accompanied by placards in the immediate vicinity advertising a certain percentage-off discount from the stated "original" price. In other cases, the signage presents a whole-price reduction (e.g., "$XX.XX") from that same reference price.

20.      These signs—uniformly printed on black or navy-blue card stock with bold, white font—appear throughout Hurley outlet stores in California and throughout the United States. Defendant does not disclose when any item was last offered, if ever, at its "original" price.

21.      Photographs of Defendant's stores, included in Exhibit A, reveal the systematic nature of this practice:

 

---

7






22.    As shown in those photographs, Defendant's "original" or "ticket" prices include no qualifying language suggesting a price comparison to other markets. Instead, Defendant's pervasive use of percentage-off and whole-price reduction signage creates the unmistakable impression that the advertised discounts reflect reductions from a bona fide, in-store, former selling price.[19] The pricing signage does not suggest any comparison to Hurley's mainline retail stores or to third-party retailers.

23.    Additionally, because the reference prices on the outlet merchandise are styled as prior in-store prices, not market comparisons, Defendant's scheme is not a "Compare At" or "Comparable Value" pricing model. In such models, sellers explicitly invite comparison to external retailers. No such qualifier exists here (at least for the majority of the relevant time period). Consequently, Plaintiff is not required to "assert evidence from which a rational trier of fact could infer that the comparative reference price was inaccurate," as that standard "only arises when the language of the advertisement implies a comparison to another retailer."[20] Where, as here, the reference price is represented as a former in-store price, the law requires that it reflect the price at which the item was actually and regularly offered for sale.[21]

24.    Plaintiff is further informed and believes and thereon alleges, that Defendant's Hurley outlet merchandise and pricing practices are materially identical across all Hurley outlet stores in California and throughout the United States. Subject to verification in discovery, Plaintiff is informed and believes that the same false reference pricing scheme—featuring

---

[19] *See Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 725 (N.D. Cal. 2024) ("A reasonable consumer does not need language such as, 'Formerly $9.99, Now 40% Off $9.99,' or '40% Off the Former Price of $9.99,' to reasonably understand '40% off' to mean 40% off the former price of the product.") (quoting *Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO, 2016 WL 3268995, at *4 (N.D. Cal. June 15, 2016)).

[20] *See Harris v. PFI W. Stores, Inc.*, No. SACV192521JVSADSX, 2020 WL 3965022, at *4 (C.D. Cal. Apr. 9, 2020) (citing *Sperling*, 291 F.Supp.3d at 1085-86 and *Horosny v. Burlington Coat Factory of California, LLC*, No. CV1505005SJOMRWX, 2015 WL 12532178, at *6 (C.D. Cal. Oct. 26, 2015) (emphasis added).

[21] *See* Cal. Bus. & Prof. Code § 17501 (former price must be the prevailing market price within the three months immediately preceding the advertisement, unless otherwise clearly stated); 16 C.F.R. § 233.1(a) (reference price must be a "bona fide" former price, meaning the price at which the product was "openly and actively offered for sale, for a reasonably substantial period of time.").

inflated "original" price tags and uniform in-store discount signage—is deployed consistently across Defendant's nationwide outlet store network.

25.    Even if Defendant was to demonstrate that some products were at one time offered at the full reference price (a disputed question of fact itself), such isolated instances would be insufficient to render the reference prices "actual" or "bona fide" under governing law.[22] Likewise, under California's FAL, a represented former price must have been the prevailing market price within the past three months, or else the advertisement must "clearly, exactly and conspicuously" disclose the date when that price was in effect—something Defendant consistently fails to do.[23]

26.    In sum, Defendant's fake discounting practices are designed to manipulate consumer behavior, increase sales, and artificially inflate perceived product value. The scheme deprives consumers of accurate pricing information and results in the unlawful imposition of a price premium for merchandise that would not command such prices absent the false reference pricing. Plaintiff, like thousands of other consumers, was duped into overpaying for the products under the mistaken belief that he was receiving a legitimate discount.

**C.    Defendant's Fraudulent Price Discounting Scheme Harms All Consumers**

27.    A product's reference price matters because it serves as the anchor from which consumers assess its value.[24] Empirical research Confirms that consumers are more willing

---

[22] For the advertised former price to be "actual, bona fide" and "legitimate" it must be the "price at which the article was offered to the public *on a regular basis for a reasonably substantial period of time*." 16 C.F.R. § 233.1(a) (emphasis added).

[23] *See* Cal. Bus. & Prof. Code § 17501. Nor would such rare offerings constitute the "prevailing market price" within the "three months next immediately preceding the publication of the advertisement," as is required by the FAL, "unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Indeed, where certain items are sold by only one retailer—as is the case with Defendant's MFO items, the "prevailing market price" is the most "common," "predominant," or "most widely occurring" price at which items are sold by that retailer. *See People v. Super. Ct. (J.C. Penney Corp., Inc.)*, 34 Cal. App. 5th 376, 410-13 (2019) (citing authorities).

[24] Thaler, *Mental Accounting and Consumer Choice*, *supra* n.5, at 212.

to pay higher prices when a product is presented with a higher reference price.[25] Defendant's false reference pricing causes consumers to overvalue Hurley outlet merchandise, leading them to pay more than they otherwise would. The products' sales prices are thus artificially inflated, not due to intrinsic value, but because Defendant has manipulated consumer perception through false comparisons. As discussed above, academic literature makes clear:

> [A]dvertised reference prices in these deal-oriented advertisements can enhance buyers' internal reference prices . . . . These enhanced internal reference prices, when compared with the lower selling price, result in higher transaction value perceptions. The increase in perceived transaction value enhances purchases and reduces search behavior for lower prices. If sellers intentionally increase the advertised reference prices above normal retail prices, this is, inflate advertised reference prices, the resulting inflated perceptions of transaction value would be deceptive. Harm to both buyers and competitors could result from the effect of the inflated transaction value on buyers' search and purchase behaviors.[26]

28.    All consumers who purchase Hurley outlet merchandise are harmed by this pricing scheme because its impact is systemic: it inflates demand and elevates actual sales prices across the board. As Staelin et al explains, "the higher reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins." In other words, whether or not a particular consumer "believed" the discount was real is irrelevant—every purchaser paid more than they would have in a properly functioning market, and all were denied the benefit of the bargain.

29.    Put differently, Defendant's fake discounting scheme causes consumers to (reasonably) perceive they are getting a bargain. This perception creates an artificial

---

[25] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product*, 60 no 1 J. APPLIED BUS. RSCH. 66 (1990). Moreover, "if a higher reference price encourages consumers to pay a higher price for a product than the consumer was willing to pay for the identical product with a lower reference price, then the practice of using high reference prices would be deceptive." *Id*. at 60.

[26] Dhruv Grewal et al., *supra* note 11, at 46.

increase in what economists call "transactional utility"[27] or "transactional value"[28]—the extra satisfaction consumers derive from believing they got a deal. But that satisfaction is based on a lie. As a result, Hurley outlet merchandise appears more valuable than it is, skewing market demand and distorting prices.

30. Basic economic principles confirm that this harm is uniform across the Classes. Cost and demand conditions—not individual subjective beliefs-dictate the price consumers pay.[29] The aggregate demand curve represents consumers' collective valuation of a product. When Defendant's deceptive pricing inflates this valuation, the demand curve shifts outward, and prices rise for everyone, regardless of whether a particular buyer was "deceived" in a traditional sense.

31. Accordingly, Defendant's scheme artificially inflates the market price of Hurley outlet merchandise. Individual beliefs, motivations, or purchasing rationales do not insulate consumers from harm. As long as the aggregate demand for a falsely discounted product increases, all purchasers pay a higher price than they otherwise would. Plaintiff and the proposed Classes thus suffered a common injury caused by Defendant's uniform misconduct.

**D.     Plaintiff's Counsel's Investigation**

32. Plaintiff's counsel has conducted a large-scale, ongoing investigation into Defendant's deceptive reference pricing practices at Hurley outlet stores. This investigation includes systematic in-store tracking of merchandise in California from March 30, 2022 through present.[30] A list of representative tracked products from California is attached as Exhibit B to this Complaint.

---

[27] Thaler, *Mental Accounting and Consumer Choice*, *supra* n.5, at 205.

[28] Dhruv Grewal et al., *The Effects of Price-Comparison Advertising, supra* n. 11, at 46; Grewal & Compeau, *Pricing and public policy, supra* n. 13, at 7.

[29] Mankiw, N. *Essentials of Economics*, 8th Edition. Boston, MA: Cengage Learning, 66 (2015) ("[P]rice and quantity are determined by all buyers and sellers as they interact in the marketplace"); *see also* Hal R. Varian, *Microeconomics Analysis*. 3rd Edition. New York, NY: W. W. Norton & Company, at 23-38, 144-57, 233-353 & 285-312 (1992).

[30] As of July 22, 2025, the last visit was July 10, 2025.

33.    Based on these efforts, Plaintiff is informed and believes that Defendant's reference pricing scheme—i.e., the manner in which "original" prices and corresponding discounts are presented—is materially uniform across all Hurley outlet locations, regardless of geography or time of observation.[31] While the specific discount or reference price may vary, the scheme itself does not: all items are advertised with an inflated "original" price, followed by perpetual signage promoting a percentage-off or whole-price reduction. Not once during the investigation was a product observed being offered at its full "original" price. Plaintiff is therefore informed and believes that Hurley outlet merchandise is not, as a general practice, offered for sale at its tagged price—let alone "on a regular basis for a reasonably substantial period of time," as required by FTC regulations.

34.    The investigation confirms that the reference prices on Hurley outlet items—including those purchased by Plaintiff—do not reflect legitimate, bona fide former prices. Rather, they serve solely as artificial anchors used to fabricate a perceived discount. Hundreds, if not thousands of products were observed as continuously "on sale" during the multi-month investigation period. This pattern constitutes a pervasive, systematic, and deceptive practice at all Hurley outlet locations visited.[32]

35.    In sum, Defendant's deceptive discounting scheme is executed uniformly across all Hurley outlet locations in California and—on information and belief—nationwide. Outlet shoppers are routinely misled into believing they are purchasing

---

[31] *See, e.g.,* Exhibit A.

[32] Notably, numerous California federal courts have held that plaintiffs in false discount pricing cases need not plead detailed pre-suit investigations to survive a motion to dismiss—even under Rule 9(b), which in any event does not apply to claims under New York's General Business Law. *See, e.g., Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017) (plaintiff "cannot reasonably be expected" to have detailed knowledge of internal pricing policies pre-discovery; *Stathakos*, 2016 WL 1730001, at *3-4 (Rule 9(b) satisfied despite no pre-suit investigation allegations); *Knapp*, 2016 WL 3268995, at *4 ("perpetual sale" allegations sufficient); *Horosny*, 2015 WL 12532178, at *4 (upholding "information and belief" pleading*); Le v. Kohl's*, 160 F. Supp. 3d at 1099 (no nationwide investigation required).

13

premium mainline merchandise at steep discounts, when in fact they are paying inflated prices for lower-quality goods never intended for sale in full-price retail settings.[33]

36.    Despite Plaintiff's counsel's extensive investigative efforts, the full scope of Defendant's deceptive pricing and sourcing practices remains concealed within records exclusively in Defendant's possession. Plaintiff will seek targeted discovery to obtain the internal data and documentation necessary to confirm the breadth and depth of Defendant's scheme.

## IV.    PARTIES

**Plaintiff Kyle McCarty**

37.    Plaintiff Kyle McCarty resides in San Diego, California. On April 19, 2025, Plaintiff went shopping at the Hurley outlet store located at 4211 Camino De La Plz, San Diego, California 92173 ("San Ysidro Outlets"). In reliance on Defendant's false and deceptive advertising, marketing and discount pricing scheme, Plaintiff purchased three graphic t-shirts that each bore an "original" (reference) price of approximately $28.00, with an actual sales price of $30.00 for all three t-shirts (Buy 3 for $30 deal). Plaintiff also purchased khaki shorts that bore an "original" (reference) price of $59.95, with an actual sales price of $39.95. Plaintiff paid an after-tax total of $75.41.

38.    During his time at the Hurley outlet store on April 19, 2025, Plaintiff browsed the store and observed numerous signs advertising storewide markdowns and percentage-

---

[33] While many past courts have not required them—*see supra* n.37—other courts have also routinely upheld complaints that ***do*** include pre-suit investigations—like Plaintiff's here—under both federal and state standards, including in state court actions where Rule 9(b) does not apply. *See, e.g., Adams v. Cole Haan, LLC*, No. 8:20-CV-00913-JWH-DFMx, 2021 WL 4907248 (C.D. Cal. Mar. 1, 2021); *Dahlin v. Under Armour, Inc.*, No. CV 20-3706 PA (JEMx), 2020 WL 6647733 (C.D. Cal. July 31, 2020); *Inga*, 2020 WL 5769080, at *1; *Harris*, 2020 WL 3965022, at *1; *Calderon v. Kate Spade & Co., LLC*, No. 3:19-CV-00674-AJB-JLB, 2020 WL 1062930 (S.D. Cal. Mar. 5, 2020); *Fisher v. Eddie Bauer LLC*, No. 19-cv-857 JM (WVG) 2020 WL 4218228 (S.D. Cal. Feb. 3, 2020); *Dennis v. Ralph Lauren Corp.*, No. 16-cv-1056-WQH-BGS, 2017 WL 3732103 (S.D. Cal. Aug. 29, 2017); *Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS (JMA), 2017 WL 3021019 (S.D. Cal. July 17, 2017); *Azimpour v. Sears, et al.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017); *Fallenstein v. PVH Corp., et al.*, No. 21-CV-01690-AJB-AGS (S.D. Cal. Jan. 3, 2023) at ECF No. 29 (Order Denying Defendants' Motion to Dismiss Plaintiff's First Amended Complaint); *Schertzer v. Alpargatas USA Inc* (Super. Ct. San Diego, 37-2019- 00015352, Dkt. No 45).

based discounts. After reviewing the advertised "original" and sale prices on the items he selected, he reasonably believed he was receiving a substantial bargain. This belief was material to his decision to purchase.

39.    Plaintiff would not have purchased the item or would not have paid as much as he did, had he known the advertised discounts were false. He believed the items had been previously offered at the higher reference price and were not being sold at a genuine markdown. In fact, he did not receive the benefit of any real discount and ultimately paid more than the fair value of the product under the mistaken impression that he was securing a deal.

40.    Accordingly, Plaintiff has suffered economic injury as a direct result of Defendant's unfair and deceptive false discounting practices, including the inflated price paid for merchandise falsely presented as discounted goods.

**Plaintiff's and Class Members' Economic Injuries Are Readily Quantifiable**

41.    Plaintiff has been injured and incurred quantifiable actual damages as a result of Defendant's fraudulent pricing scheme. Plaintiff overpaid for the items he purchased as described herein. It was Defendant's fraudulent pricing scheme and attendant deception that caused Plaintiff to overpay. Despite Plaintiff's original beliefs that the items were discounted and thus that their value was significantly greater than the sale prices paid for them, Plaintiff, in actuality, paid an *inflated* price for the items.

42.    That is, the items Plaintiff purchases were worth less than the amount Plaintiff paid for them. If Defendant had no employed the falsely advertised "original" prices for the items, then they would not have commanded such a high, inflated price. The price premium Plaintiff paid—i.e., the difference between the amount Plaintiff paid and the value received, or the but-for-price the product would have commanded absent the false discounting scheme, can be isolated through multiple expert-based models, including hedonic regression, conjoint analysis, and market simulation, which Plaintiff will further describe in his motion to certify this action pursuant to Federal Rule of Civil Procedure 23.

**Plaintiff Has Standing for Injunctive Relief and Lacks an Adequate Remedy at Law**

43.    Plaintiff is susceptible to harm reoccurring and therefore requires an injunction, because he cannot be certain that Defendant will have corrected this deceptive pricing scheme, and he desires to shop at Defendant's Hurley outlet stores in the future because he likes the brand and the items that are offered. Due to the enormous, fluctuating variety of styles of merchandise offered at Hurley outlet stores, Plaintiff will be unable to parse what prices are inflated and untrue and what prices are not. Plaintiff simply does not have the resources to ensure that Defendant is complying with California and federal law with respect to its pricing, labeling, and advertising of its outlet merchandise.

44.    Further, because of the large selection of merchandise available at Defendant's Hurley outlet stores, the sheer volume of products involved in Defendant's deceit (i.e., on information and belief, virtually all of them), and the likelihood that Defendant may yet develop and market additional Hurley merchandise items for sale, Plaintiff may again, by mistake, purchase a falsely discounted product at one of the Hurley outlet stores under the reasonable, but false, impression that Defendant had corrected the scheme and that its reference price advertisement represented a *bona fide* former price at which the item was previously offered for sale by Defendant. However, without a substantial, time-consuming, and costly investigation, Plaintiff will have no way of knowing whether Defendant has deceived him again.

45.    Absent an equitable injunction enjoying Defendant from continuing in the unlawful course of conduct alleged herein, Plaintiff, Class members, and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendant's ongoing and deceptive conduct that cannot be remedied with monetary damages. Accordingly, Plaintiff, Class members, and the general public lack an adequate remedy at law and an injunction is the only form of relief which will guarantee Plaintiff, as well as California consumers at large, the appropriate assurances.

46.     Additionally, Plaintiff presently lacks an adequate remedy at law because he has not yet developed the damages model necessary to determine whether actual damages will fully compensate the monetary harm suffered, or whether equitable restitution will be required to make Plaintiff whole. Legal damages are traditionally limited to actual out-of-pocket losses (reliance damages) or lost benefit of the bargain (expectancy damages), whereas equitable restitution focuses on restoring ill-gotten gains and wrongfully obtained by the defendant from the plaintiff/class members. Critically, California law prohibits recovery of benefit-of-the-bargain damages in consumer deception cases but permits recovery of the same measure through *equitable relief*. *See* Cal. Civ. Code § 3343. For example, Plaintiff and other Class members may be entitled to recover the difference between the price paid and the value received—a measure unavailable at law but recoverable in equity. Until Plaintiff retains an expert and completes the necessary economic analysis, it remains uncertain whether legal damages will even be viable, let alone adequate. Accordingly, Plaintiff credibly alleges at this stage that no adequate legal remedy exists, satisfying the *Sonner* standard for pleading equitable relief.[34]

47.     Plaintiff also lacks an adequate remedy at law because his claims under the UCL "sweep[] more broadly than [those under] the CLRA." *See Allen v. Hylands, Inc.*, 773 F. App'x 870, 874 (9th Cir. 2019). Although Plaintiff's UCL claim under the "fraudulent" prong applies the same "reasonable consumer" standard as the CLRA, his claim under the "unfair" prong reaches substantially further. As alleged, Defendant's conduct may be deemed "unfair" where it offends established public policies favoring transparency in pricing or constitutes immoral, unethical, oppressive, or unscrupulous conduct that substantially injures consumers—harms not fully captured by the CLRA's remedial

---

[34] Decisions in numerous false discounting cases have accepted similar allegations, where the defendant has challenged the plaintiffs' ability to seek equitable relief following the decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). *See, e.g.*, *Dahlin*, 2020 WL 6647733, at *4-5; *Adams*, 2021 WL 4907248, at *3-4 (C.D. Cal. Mar. 1, 2021); *Fallenstein*, No. 21-CV-01690-AJB-AGS (S.D. Cal. Jan. 3, 2023) at ECF No. 29 (Order Denying Defendants' Motion to Dismiss Plaintiff's First Amended Complaint). *Dahlin v. The Donna Karan Co. Store LLC*, No. 2:21-cv-07711-AB-JPRx (C.D. Cal. Mar. 6, 2022) at ECF No. 30 (Order Denying Motion to Dismiss Plaintiff's First Amended Complaint) at 5-10.

scheme. Because these broader injuries do not have an adequate legal remedy under the CLRA, and the UCL independently authorizes equitable relief to remediate such conduct, Plaintiff credibly alleges that legal damages are inadequate. Thus, Plaintiff properly pleads parallel claims for legal damages and equitable restitution at this stage.

48.    Finally, Plaintiff further lacks an adequate remedy at law because the UCL (an equitable cause of action) carries a statute of limitations of four years, while the CLRA (which can provide legal damages and equitable restitution) carries a shorter, three-year statute of limitations. Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783. Thus, dismissal of Plaintiff's (equitable) UCL claims would wipe out an entire year's worth of monetary recovery for the Classes.

**Defendant**

49.    Plaintiff is informed and believes, and upon such information and belief alleges, Defendant Hurley International, LLC is an Oregon limited liability company with its principal executive offices in Costa Mesa, California. Plaintiff is informed and believes that Defendant owns and operates Hurley outlet stores in California, and advertises, markets, distributes, and/or sells clothing, accessories, and other items in California and throughout the United States.

50.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiff and members of the proposed Classes, as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

51.    Defendant knows that its reference price advertising is false, deceptive, misleading, unconscionable, and unlawful under California and federal law.

52.    Defendant fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the proposed Classes the truth about its advertised discount prices and former reference prices. Defendant concealed from consumers the true nature and quality of the products sold at its Hurley outlet stores.

53.    Defendant intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the proposed Classes to purchase Hurley outlet products in its stores.

54.    At all relevant times, Defendant has been under a duty to Plaintiff and the Classes to disclose the truth about its false discounts.

## IV.    CLASS ALLEGATIONS

Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Classes against Defendant:

**Nationwide Class:**

All persons who, within the United States and within the applicable statute of limitations preceding the filing of this action (the "Class Period"), purchased from a Hurley outlet store one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

**California Class:**

All persons, within the State of California, who, within the applicable statute of limitations preceding the filing of this action (the "Class Period"), purchased from a Hurley outlet store one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

Excluded from the Classes is Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of its respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend the Class definitions, including the addition of one or more classes, in connection with his motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

55. ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Classes contains hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

56. ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

A. whether, during the Class Periods, Defendant used false advertised reference prices on its Hurley outlet product labels and falsely advertised price discounts on merchandise sold in its outlet stores;

B. whether Defendant ever offered items for sale or sold items at their advertised reference price;

C. whether, during the Class Periods, the original price advertised by Defendant was the prevailing market price for the products in question during the three months preceding the dissemination and/or publication of the advertised former prices;

D. whether, during the Class Periods, any original prices advertised by Defendant was false or misleading;

E. whether Defendant's purported sale prices advertised in its Hurley outlet stores reflected any actual discounts or savings;

F. whether Defendant's purported percentage-off discounts advertised in its Hurley outlet stores reflected any actual discounts or savings;

G. whether Defendant's alleged conduct constitutes violations of the laws asserted;

H. whether Defendant's alleged conduct constitutes violations of federal and/or California pricing regulations;

I.      whether Defendant engaged in an unconscionable commercial practice, and/or employed deception or misrepresentation under the laws asserted;

J.      whether Plaintiff and Class members are entitled to damages and the proper measure of that loss;

K.      whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparisons.

57.     *Typicality*: Plaintiff's claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class members.

58.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Classes.

59.     *Superiority*: The nature of this action and the nature of laws available to Plaintiff and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

60.     All Class members, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact claiming that former reference prices were legitimate. Due to the scope and extent of Defendant's consistent false sale prices, and advertising scheme, disseminated in a years-long campaign to California

consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Classes. In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing merchandise sold at Hurley outlet stores.

61.    Plaintiff is informed that Defendant keeps extensive computerized records of its Hurley customers through, *inter alia*, customer loyalty programs and general marketing programs. Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

# V.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
***(On Behalf of Plaintiff and the California Class)***

62.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

63.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant for violations of California's UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

64.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

65.    The UCL imposes strict liability. Plaintiff and members of the proposed California Class need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

66.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

67.    Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendant's acts and practices offended an established public policy of transparency in pricing, including regulations enacted by the FTC, and they constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

68.    The harm emanating from this practice to Plaintiff and members of the proposed California Class outweighs the utility it provides because Defendant's practice of advertising false discounts provides no utility. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

*"Fraudulent" Prong*

69.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

70.    Defendant's acts and practices alleged above constitute fraudulent business acts or practices as Defendant has deceived Plaintiff and members of the proposed California Class and is highly likely to deceive members of the consuming public. Plaintiff and members of the proposed California Class relied on Defendant's fraudulent and deceptive representations regarding its false or outdated "original prices" for products sold by Defendant at its Hurley outlet stores. These misrepresentations played a substantial role in Plaintiff's and members of the proposed California Class's decision to purchase the product at a purportedly steep discount, and Plaintiff and members of the proposed

California Class would not have purchased the product without Defendant's misrepresentations.

**"Unlawful" Prong**

71.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

72.     Defendant's act and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with its deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, like Defendant's, are described as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - *for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

73.     In addition, Defendant's acts and practices violate California law, which expressly prohibits false former pricing schemes. The FAL, Cal. Bus. & Prof. Code § 17501, entitled "*Worth or value; statements as to former price*," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer

is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

74.    Defendant violates § 17501 because it advertises items, including the items that Plaintiff purchased as described herein, with a former "original" price that greatly exceeds the prevailing market price of those items. Defendant's own sales records will show that it normally sells its products, including the items purchased by Plaintiff, at prices substantially lower than the advertised former "original" price, thereby establishing that those prices exceed the prevailing market price of Defendant's merchandise in violation of Cal. Bus. & Prof. Code § 17501.

75.    As detailed in Plaintiff's Third Cause of Action below, the CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

76.    As detailed herein, and for the same reason that Defendant's acts and practices violate the FTCA and the FAL, they also violate the CLRA.

77.    Defendant's practices, as set forth above, misled Plaintiff, and are likely to mislead the proposed California Class and the public in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

78.    Defendant's violations of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat to Plaintiff, members of the proposed California Class, and the public who, if Defendant's false pricing scheme is permitted to continue, will be deceived into purchasing products based on illegal price

comparisons. These false comparisons created phantom markdowns and led to financial harm for consumers like Plaintiff and the members of the proposed California Class as described herein. Because of the surreptitious nature of Defendant's deception, these injuries cannot be reasonably avoided and will continue to be suffered by the consuming public absent a mandated change in Defendant's practice.

79.     Pursuant to the UCL, Plaintiff and members of the proposed California Class are entitled to preliminary and permanent injunctive relief enjoining Defendant from further engagement in this unfair competition, as well as disgorgement and restitution to Plaintiff and the proposed California Class of all Defendant's revenues wrongfully obtained from them as a result of Defendant's unfair competition, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

**Violation of California's False Advertising Law ("FAL")**
**CAL. BUS. & PROF. CODE §§ 17500, *et seq.***
***(On Behalf of Plaintiff and the California Class)***

80.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant for violations of California's FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq*.

82.     Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services . . . which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

(emphasis added).

83.     The FAL further provides:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

Cal Bus. & Prof. Code § 17501.

84. Defendant's routine of advertising discounted prices from false "reference" prices, which are not and never have been the prevailing market prices of those products and were materially greater than the true prevailing prices (i.e., Defendant's average and/or most common actual sale price), constitutes an unfair, untrue, and misleading practice in violation of the FAL. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold at Defendant's Hurley outlet stores were worth more than they actually are.

85. As a direct and proximate result of Defendant's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, Plaintiff and members of the proposed California Class suffered economic injury.

86. Plaintiff, on behalf of himself and the California Class, requests that this Court order Defendant to restore this money to Plaintiff and the California Class, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiff, members of the California Class, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**CAL. CIV. CODE § 1750, *et seq.***
***(On Behalf of Plaintiff and the California Class)***

87. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

88.    Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for violations of the CLRA, Cal. Civ. Code § 1750, *et seq*.

89.    Plaintiff and each member of the California Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendant's sale of products at its Hurley outlet stores were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and members of the California Class are "goods" or "services" within the meaning of Cal. Civ. Code §§ 1761(a) - (b).

90.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the California Class which were intended to result in, and did result in, the sale of products sold at its Hurley outlet stores:

        a.    advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

        b.    making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

91.    Plaintiff and the California Class are consumers who have suffered economic injury and damages, including benefit of the bargain damages, as a result of Defendant's use and employment of the false and misleading reference pricing alleged herein. Pursuant to Cal. Civ. Code § 1780(a), Plaintiff therefore seeks an order enjoining such methods, acts, or practices as well as any other relief the Court deems proper. Plaintiff additionally seeks costs and reasonably attorneys' fees pursuant to Cal. Civ. Code § 1780(e).

92.    On August 18, 2025 Plaintiff concurrently served a notice letter pursuant to California Civil Code § 1782(a), providing Defendant with notice of the CLRA violations alleged herein and demanding that Defendant cease its unlawful pricing practices and take appropriate corrective action. If Defendant fails to adequately respond within thirty (30) days of service, Plaintiff will seek damages and attorneys' fees under the CLRA, in addition to the equitable relief already sought pursuant to § 1782(d). Plaintiff expressly reserves the

right to pursue such damages and fees and hereby incorporates that request into this Complaint with the intention—and to the maximum extent permitted by law—of obviating the need for any further amendment following expiration of the statutory notice period. However, Plaintiff acknowledges that a formal amendment may be required depending on the Court's interpretation of the § 1782 compliance at the pleading stage.

93.    Filed concurrently is a declaration of venue pursuant to Cal. Civ. Code §1780(d).

## FOURTH CAUSE OF ACTION

### Unjust Enrichment
### *(On Behalf of Plaintiff and the Nationwide Class)*

94.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

95.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

96.    Plaintiff and the Nationwide Class conferred a benefit on Defendant in the form of gross revenues derived from their purchases of merchandise from Hurley outlet stores.

97.    Defendant had knowledge of the benefit conferred upon it by Plaintiff and the Nationwide Class members.

98.    Defendant has been unjustly enriched in retaining the revenues obtained through its deceptive and misleading pricing practices. Specifically, Defendant falsely represented that its merchandise was being offered at a discount from a higher, former "original" price, when in fact such reference prices were fabricated or inflated, and the items were never offered at the claimed original prices for a meaningful period of time.

99.    Retention of those revenues is unjust and inequitable because Plaintiff and the Nationwide Class paid more than they otherwise would have had they known the true nature of Defendant's pricing practices. Plaintiff and Nationwide Class members would not have

purchased the items at all, or would have paid significantly less, absent Defendant's deceptive marketing.

100. Defendant has thereby profited from the deceptive pricing scheme under circumstances which make it inequitable for Defendant to retain those gains.

101. Plaintiff and the Nationwide Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's deceptive sale pricing practices.

102. As a direct and proximate result of Defendant's conduct, Plaintiff and the Nationwide Class members have suffered monetary losses in an amount to be proven at trial.

103. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for example, individual damages are determined to be less than the total purchase price or statutory thresholds. Restitution provides a more prompt and reliable means of redressing the harm by restoring to Plaintiff the full amount paid under misleading circumstances.

104. **Choice of Law.** California's interest in applying its law to this dispute is strong. The conduct giving rise to Plaintiff's claims emanated from California, including the formulation of Defendant's pricing strategy, creation of marketing materials, and design of in-store signage. California has a substantial interest in regulating businesses that operate within its borders and export deceptive practices to consumers nationwide.

105. Application of California law to the common law claims of the Nationwide Class, including the cause of action for unjust enrichment, is appropriate because (1) California has a materially greater interest than any other state in enforcing its laws against a business operating within its borders; and (2) California's legal principles on unjust enrichment do not conflict materially with those of other jurisdictions in a way that would frustrate the interests of justice.

106. Accordingly, California law governs Plaintiff's common law claim for unjust enrichment on behalf of himself and the Nationwide Class.

# FIFTH CAUSE OF ACTION

## Fraud by Omission
### *(On Behalf of Plaintiff and the Nationwide Class)*

107.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

108.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

109.    Defendant marketed and sold its merchandise to consumers throughout the United States, including to Plaintiff in California.

110.    Defendant omitted and concealed material facts about the nature of its pricing practices. Specifically, Defendant failed to disclose that the "original" or "regular" prices displayed on its merchandise were not bona fide former prices and that the advertised discounts were illusory.

111.    These omissions misrepresented that customers were receiving a meaningful discount when, in fact, the merchandise had not been offered at the referenced original prices for a reasonably substantial period of time, if ever.

112.    Defendant knew or should have known that its reference prices were fabricated or artificially inflated and that consumers would be misled into believing they were receiving a genuine bargain.

113.    Defendant knew that the existence of a genuine discount is a material fact that influences consumer purchasing decisions. Retailers have a duty to refrain from deceptive pricing practices that manipulate consumers' perceptions of value.

114.    Defendant therefore had a duty to disclose the truth about its pricing practices but failed to do so.

115.    Consumers, including Plaintiff and Nationwide Class members, justifiably relied on the misleading appearance of discounts in making their purchase decisions.

116.   As a result of these omissions and misrepresentations, Plaintiff and the Nationwide Class members paid more for Hurley outlet merchandise than they otherwise would have, or made purchases they would not have made at all.

117.   **Choice of Law.** California's interest in applying its law to this dispute is strong. The conduct giving rise to Plaintiff's claims emanated from California, including the formulation of Defendant's pricing strategy, creation of marketing materials, and design of in-store signage. California has a substantial interest in regulating businesses that operate within its borders and export deceptive practices to consumers nationwide.

118.   Application of California law to the common law claims of the Nationwide Class, including the cause of action for fraud by omission, is appropriate because (1) California has a materially greater interest than any other state in enforcing its laws against a business operating within its borders; and (2) California's legal principles on unjust enrichment do not conflict materially with those of other jurisdictions in a way that would frustrate the interests of justice.

119.   Accordingly, California law governs Plaintiff's common law claim for fraud by omission on behalf of himself and the Nationwide Class.

## SIXTH CAUSE OF ACTION

### Fraud (Affirmative Misrepresentation)
### *(On Behalf of Plaintiff and the Nationwide Class)*

120.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

121.   Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

122.   Defendant engaged in a pattern of deceptive conduct by knowingly and intentionally mispresenting the nature of the pricing of its merchandise.

123.   Specifically, Defendant affirmatively represented—both on product tags and in nearby store signage—that its merchandise was being offered at a discounted "sale" price, reduced from a former, higher "original" price. These representations were false. In

truth, the so-called "original" prices were not the prevailing market prices, had not been offered for a reasonable period of time, or had never been the actual selling price for the merchandise.

124.   Defendant made these misrepresentations with knowledge of their falsity and with the intent to induce Plaintiff and the Nationwide Class members to rely on the appearance of a discount and make purchases they otherwise would not have made.

125.   Defendant's false reference pricing created a misleading impression of value and urgency, deceiving consumers into believing they were obtaining a bargain.

126.   Plaintiff and the Nationwide Class justifiably relied on Defendant's misrepresentations in deciding to purchase the merchandise at the stated "sale" prices. A reasonable consumer would expect a discount to reflect a genuine markdown from a bona fide original price.

127.   As a result of Defendant's fraudulent conduct, Plaintiff and the Nationwide Class suffered monetary loss, including paying more than the true value of the merchandise or making purchases they otherwise would have declined.

128.   Defendant's conduct was willful, malicious, and fraudulent, and Plaintiff and the Nationwide Class are entitled to compensatory and punitive damages in an amount to be proven at trial.

129.   **Choice of Law.** California's interest in applying its law to this dispute is strong. The conduct giving rise to Plaintiff's claims emanated from California, including the formulation of Defendant's pricing strategy, creation of marketing materials, and design of in-store signage. California has a substantial interest in regulating businesses that operate within its borders and export deceptive practices to consumers nationwide.

130.   Application of California law to the common law claims of the Nationwide Class, including the cause of action for fraud (affirmative misrepresentation), is appropriate because (1) California has a materially greater interest than any other state in enforcing its laws against a business operating within its borders; and (2) California's legal principles on

unjust enrichment do not conflict materially with those of other jurisdictions in a way that would frustrate the interests of justice.

131.    Accordingly, California law governs Plaintiff's common law claim for fraud (affirmative misrepresentation) on behalf of himself and the Nationwide Class.

## VI.    PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and on behalf of the other members of the Classes, requests that this Court award relief against Defendant as follows:

A.    Certify the Classes and designate Plaintiff as the Class Representative and his counsel as Class Counsel;

B.    Award Plaintiff and members of the Classes any and all actual, consequential, statutory, and punitive damages, as permitted by applicable law;

C.    Award damages and attorneys' fees under the CLRA to Plaintiff, contingent upon Defendant's failure to cure the violations within thirty (30) days of service of Plaintiff's notice pursuant to California Civil Code § 1782(a);

D.    Award restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the members of the Classes as a result of its unlawful, unfair, and fraudulent business practices described herein;

E.    Award declaratory and injunctive relief as permitted by law or equity, including an order enjoining Defendant from continuing the unlawful practices as set forth herein, including, if appropriate, retaining jurisdiction to monitor Defendant's compliance with permanent injunctive relief;

F.    Order Defendant to engage in a corrective advertising campaign;

G.    Award attorneys' fees and costs; and

H.    Order such other and further relief as the Court may deem necessary or appropriate.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all the claims so triable.

Dated: August 18, 2025

**LYNCH CARPENTER LLP**

By: _/s/ Todd D. Carpenter_

Todd D. Carpenter (SBN 234464)
todd@lcllp.com
Scott G. Braden (SBN 305051)
scott@lcllp.com
9171 Towne Centre Drive, Suite 180
San Diego, CA 92122
Telephone:   (619) 762-1900
Facsimile:    (858) 313-1850

*Attorneys for Plaintiff and
Proposed Class Counsel*

CLASS ACTION COMPLAINT